UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 05-CV-1399 (JFB)

———————————

ARKEEM BENNETT,

Petitioner,

VERSUS

ELIOT SPITZER, ATTORNEY GENERAL OF NEW YORK, AND
FLOYD BENNETT, SUPERINTENDENT OF ELMIRA CORRECTIONAL FACILITY,

Respondents.

———————————

MEMORANDUM AND ORDER
January 31, 2007

———————————

JOSEPH F. BIANCO, District Judge:

Arkeem Bennett (hereinafter "petitioner" or "Bennett") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. In a judgment rendered on April 26, 2000, following a jury trial in the Supreme Court of the State of New York, Queens County, Bennett was convicted of attempted robbery, criminal mischief and intimidating a witness. He was sentenced to a term of eleven years' imprisonment.

Bennett challenges his conviction on grounds that he was denied effective assistance of trial counsel and appellate counsel. For the reasons set forth below, the petition is denied.

I. BACKGROUND

A. Underlying Facts

The following facts are adduced from the instant petition and underlying record.

On October 11, 1998, around 11:30 p.m., Xiang Qing Jiang (hereinafter "Jiang") was working as manager of the New Mandarin Duck restaurant (hereinafter "the restaurant") in Far Rockaway, Queens. (Tr. 307, 313,

325.)[1] The restaurant had already closed, and Jiang was cleaning the floor. (Tr. 313.) Shortly after midnight, Bennett and another man, Barry Davis (hereinafter "Davis"), approached the restaurant. (Tr. 313.) Bennett was a regular customer of the restaurant. (Tr. 310-313.) Davis began jumping on Jiang's car, which was parked in front of the restaurant, while Bennett walked alongside the vehicle. (Tr. 313-14.) After Davis had broken the skylight and the windshield of the car, he and Bennett left the scene. (Tr. 319-21.) Jiang immediately called the police, who arrived approximately fifteen minutes later. (Tr. 321.) Jiang had trouble explaining to the police what had happened, as he speaks Mandarin, Fukinese, and Fu-chou (a third Chinese dialect), and has difficulty communicating in English. (Tr. 306, 321.) Through gestures and the telephonic assistance of a police officer's mother who spoke Mandarin, Jiang told the police that two people had jumped on his car. (Tr. 323-24.)

The next day, at approximately 3:20 p.m., Davis and Bennett returned to the restaurant. (Tr. 325.) Davis displayed a gun and demanded money from Jiang. (Tr. 326.) Bennett stood behind Davis, looking back and forth and holding one hand inside his jacket. (Tr. 328.) Jiang believed that Bennett may have had a gun. (Tr. 328.) At some point, the restaurant telephone rang, and Davis and Bennett immediately left. (Tr. 329.) They did not obtain any money from Jiang. (Tr. 330.) Again, Jiang contacted the police. (Tr. 335.) When the police arrived at the restaurant, Jiang explained, using gestures and limited English, what had transpired with Davis and Bennett.

Later that evening, at approximately 8:40 p.m., Davis and Bennett returned to the restaurant. (Tr. 341-42.) Davis again displayed a gun, asked Jiang why he had called the police, and used an ethnic slur against him. (Tr. 342-43.) Davis also threatened to break Jiang's windows if he called the police. (Tr. 348.) During this confrontation, Bennett was walking back and forth behind Davis, again with his hand in his jacket pocket. (Tr. 344.) When several customers entered the restaurant, Davis and Bennett immediately left the premises, and Jiang called the police. (*Id.*) When the police arrived, Jiang explained what had transpired and described the two men who had entered the restaurant, again using limited English and gestures. (Tr. 351-53.)

Less than an hour later, at approximately 9:15 p.m., Davis and Bennett again returned to the restaurant. (Tr. 358.) Davis broke the restaurant sign and the storefront window, then both he and Bennett walked away. (Tr. 358-59.) Jiang called the police a fourth time. (Tr. 365.) Davis was arrested a few days after the incident. (Tr. 365.)

On November 11, 1998, at approximately 6:00 p.m., Bennett, who had not been apprehended in connection with the incidents, entered Jiang's restaurant with a group of friends. (Tr. 365-66.) Jiang immediately called Dan Chu, an assistant district attorney who spoke Mandarin and had helped Jiang following Davis' arrest. (Tr. 367-68.) When police, who had been contacted by Chu, arrived at the restaurant, Bennett fled. (Tr. 369-70.) Shortly thereafter, the police arrested Bennett at his home and transported Jiang to Bennett's residence in order to identify him. (Tr. 371-72.) Jiang identified Bennett as one of the perpetrators of the previous incidents. (Tr. 447-449.)

---

[1] References to "Tr." are to pages of the trial transcript.

2

B. Procedural History

On April 26, 2000, after a jury trial, Bennett was found guilty on four counts of attempted robbery in the first degree (N.Y. Penal Law §§ 110.00, 160.15(4)), attempted robbery in the second degree (N.Y. Penal Law §§ 110.00, 160.10(1)), and criminal mischief in the third degree (N.Y. Penal Law § 145.05), as well as two counts of intimidating a witness in the third degree (N.Y. Penal Law § 215.15). Bennett was sentenced to eleven years of imprisonment.

On August 29, 2001, Bennett timely appealed his conviction to the Appellate Division, Second Department, claiming that: (1) the trial court had erred in three of its *Batson/Kern* rulings during voir dire, (2) the trial court had improperly denied his request for a *Wade* hearing, and (3) his sentence was excessive. The Appellate Division affirmed Bennett's conviction in a decision and order dated March 25, 2002. *People v. Bennett*, 739 N.Y.S.2d 612 (N.Y. App. Div. 2002).

Bennett then filed an application with the New York Court of Appeals for leave to appeal the Appellate Division's order. His application raised the same claims as those previously raised before the Appellate Division. On September 12, 2002, the Court of Appeals denied Bennett leave to appeal the decision. *People v. Bennett*, 98 N.Y.2d 729 (N.Y. 2002).

On July 18, 2003, Bennett filed a federal habeas petition in the Eastern District of New York on the basis of ineffective trial counsel, ineffective appellate counsel, use of perjured testimony, trial court "bias" and "unexamined jury misconduct." (Nisha M. Desai's Declaration in Opposition to Petition for Habeas Corpus ("Desai Decl."), Ex. G.) Respondent moved to dismiss the petition without prejudice, on grounds that it was based upon unexhausted claims. On February 9, 2004, the Honorable Nicholas G. Garaufis granted respondents' motion to dismiss, and Bennett was advised to exhaust his unexhausted claims in state court. *Bennett v. Spitzer*, No. 03-CV-3534 (NGG), at 4-5 (E.D.N.Y. February 9, 2004) (order dismissing mixed habeas petition). Bennett then filed a motion for a writ of error *coram nobis* before the Appellate Division, Second Department, on the ground of ineffective assistance of appellate counsel. The Appellate Division determined on November 1, 2004, that Bennett had failed to establish that he did not receive effective assistance of appellate counsel. *People v. Bennett*, 783 N.Y.S.2d 475 (N.Y. App. Div. 2004). Bennett appealed the Appellate Division's *coram nobis* decision to the New York Court of Appeals, which denied Bennett leave to appeal the Appellate Division's decision on February 3, 2005. *People v. Bennett*, 4 N.Y.3d 796 (N.Y. 2005).

On March 13, 2005, Bennett petitioned this Court for a writ of habeas corpus.

II. DISCUSSION

A. Timeliness

Bennett's conviction became final on December 12, 2002, when his time to file a writ of certiorari expired. *See Williams v. Artuz*, 237 F.3d 147 (2d Cir. 2001). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No 104-132, 110 Stat. 1214, petitioner's time to file a federal habeas corpus petition expired one year later, on December 12, 2003. *See* 28 U.S.C. § 2244(d)(1). Petitioner filed a "mixed" federal habeas petition containing

3

both exhausted and unexhausted claims on July 18, 2003, approximately five months before the AEDPA statute of limitations expired. Pursuant to *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982), Judge Garaufis held that petitioner could not prevail on his claim of ineffective assistance of appellate counsel because that claim had not been exhausted in state court. *Bennett*, No. 03-CV-3534 (NGG), at 4. Instructing petitioner to exhaust his ineffective assistance of appellate counsel claim by filing a writ of error *coram nobis* before a state court, Judge Gaurafis dismissed, rather than stayed, the habeas petition. *Id.*, at 6. The judge advised petitioner that he had five months remaining to exhaust his claim in state court (during which the one-year statute of limitations would be tolled) and to return to federal court by filing a new habeas petition. *Id.* at 5. Judge Garaufis' ruling appears to have been based upon the premise that petitioner's one-year statute of limitations, set to expire on December 12, 2003, had been stayed by petitioner's initiation of a federal habeas action. *Id.* ("Because the petitioner will have approximately five months after the state courts rule on his writ of error coram nobis to file a habeas corpus petition, there is no need to grant the petitioner a thirty-day stay."). However, when Judge Garaufis' opinion was issued, the limitations period for petitioner to file had, in fact, already expired. *Zarvela v. Artuz*, 254 F.3d 374, 379 (2d Cir. 2001) ("[T]he time that a habeas petition is pending in federal court is not exempted from the one-year limitations period.") (citing *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)," and therefore Section 2244(d)(2) does not toll the one-year AEPDA limitation period during the pendency of a federal habeas petition)). Thus, any successive federal habeas petition to be filed by petitioner would be barred from review as untimely.[2] *Rhines v. Weber*, 544 U.S. 269,

---

[2] Petitioner asks this Court to consider his application timely pursuant to 28 U.S.C. § 2255 and *Johnson v. United States*, 544 U.S. 295 (2005). (Reply Brief in Support of Petitioner's Habeas Corpus Petition Pursuant to U.S.C.A. § 2254 ("Pet.'s Br."), at 15-18.) Section 2255, which applies to individuals held in *federal* custody, states that a one-year statute of limitations for seeking habeas relief shall run from the latest of four dates, including "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255. In *Johnson*, the Supreme Court held that, where a *federal* prisoner seeks a collateral attack on his sentence on the basis that a prior state conviction used to enhance that sentence has been vacated, Section 2255's one-year statute of limitations begins to run when the petitioner "receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence." *Johnson*, 544 U.S. at 298. The Supreme Court found that vacatur of the petitioner's prior state conviction constituted a factual predicate of petitioner's claims under habeas review. *Johnson*, 544 U.S. at 304-05. Petitioner misconstrues Section 2255 and *Johnson* to hold that his one-year statute of limitations re-started on February 3, 2005, when the New York Court of Appeals denied his leave to appeal the Appellate Division's denial of his error *coram nobis* application. According to petitioner, these state proceedings constitute a "factual predicate" to his habeas petition. (Pet.'s Br., at 15-18.) In fact, neither Section 2255, which applies to *federal* prisoners, nor *Johnson*, which involved the effects of state court proceedings upon the validity of the federal conviction and sentence under habeas review – not ordinary state post-conviction relief – has any bearing on the instant case, which involves no

275 (2005) ("If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review.").

In *Zarvela*, in order to avoid this conundrum, the Second Circuit provided that a district court may (1) dismiss petitioner's unexhausted claims, stay consideration of the exhausted claims, and allow petitioners to return to federal court once they have exhausted their state remedies; (2) dispose of unexhausted claims on the merits; or (3) deny a mixed petition in its entirety. *Zarvela*, 254 F.3d at 379-82. The Court of Appeals noted further that a stay "will be the only appropriate course in cases like Zarvela's where an outright dismissal 'could jeopardize the timeliness of a collateral attack.'" *Id.*, at 380. In *Rhines*, the Supreme Court advised that this policy of "stay and abeyance" should be permitted only in cases (1) where petitioner has shown "good cause" for failure to exhaust his remedies, (2) where the unexhausted claims are not "plainly meritless," and (3) there is no indication that "the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 277, 278. Moreover, "district courts should place reasonable time limits on a petitioner's trip to state court and back." *Rhines*, 544 U.S. at 278 (citing *Zarvela*, 354 F.3d at 381 ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed.")).

Because his first habeas petition was dismissed, rather than stayed, following the expiration of AEDPA's one-year statute of limitations, Bennett's instant petition for habeas relief is technically untimely. However, because Judge Garaufis clearly intended for petitioner to be able to refile in federal court following the exhaustion of his claims before state court, this Court shall, pursuant to the principle of equitable tolling, consider petitioner's application for habeas relief as though it had been stayed, rather than dismissed, by Judge Garaufis. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (permitting equitable tolling of the one-year AEDPA statute of limitations "'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights'" and where petitioner has "acted with reasonable diligence") (citations omitted); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 & n.8 (2005) (permitting equitable tolling where petitioner has been pursuing his rights diligently and faced extraordinary circumstances, and declining to address "the question whether equitable tolling is applicable to AEDPA's statute of limitations").

B. Standard of Review

To determine whether Bennett is entitled to a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by AEDPA, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

---

such claims. This Court, therefore, rejects petitioner's request to find his habeas application timely upon this basis.

5

adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

C. Ineffective Assistance of Trial Counsel

Petitioner's habeas petition asserts that the ineffectiveness of trial counsel provides an independent ground for relief, while the State contends that this claim was not exhausted. Prior to bringing a petition for habeas corpus relief in federal court, a petitioner must exhaust the remedies available to him in state court. *Jones v. Keane*, 329 F.3d 290, 294 (2003). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Id.* at 295 (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). Thus, the claims presented in the federal habeas petition must be the "substantial equivalent" of the claims raised in state court. *Id.*

In his 2003 habeas petition, Bennett alleged as grounds for relief ineffective assistance of appellate counsel for failing to raise trial counsel's ineffectiveness. (Desai Decl., Ex. G.) Although his subsequent application for a writ of error *coram nobis* set forth separate claims based upon ineffective assistance of appellate counsel and of trial

6

counsel, petitioner's brief primarily appeared to argue that appellate counsel had been ineffective in declining to raise the ineffectiveness of trial counsel on appeal. (Desai Decl., Ex. J.) The Appellate Division considered petitioner's application and denied it solely on the ground of ineffective assistance of appellate counsel. *Bennett*, 783 N.Y.S.2d at 475.

At oral argument, in contrast to the wording of the habeas petition, petitioner's counsel conceded that he could not bring a valid independent claim for ineffectiveness of trial counsel because the claim had not been exhausted. (Transcript of Oral Argument, at 10-11, August 17, 2006.) Rather, he stated that petitioner sought to have trial counsel's performance evaluated in connection with the ineffective assistance of appellate counsel claim, which has been exhausted.

As petitioner's claim of ineffectiveness of trial counsel has never been squarely addressed by any state court, this Court finds, as both petitioner and the State acknowledge, that any independent claim with respect to trial counsel has not been exhausted and cannot form an independent basis for habeas relief. *See Dorsey v. Kelly*, 112 F.3d at 52. Nevertheless, as petitioner urges, this Court shall fully address the substance of petitioner's allegations regarding trial counsel's ineffectiveness because they fall within the scope of his claim for ineffective assistance of appellate counsel.

### D. Ineffective Assistance of Appellate Counsel

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the same standard established in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), for analyzing such claims as to trial counsel. *See, e.g., Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). Under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove both (1) that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) that, absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *See Mayo*, 13 F.3d at 533-34; *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52); *accord Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001). Thus, "[r]eviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues." *Jones*, 463 U.S. 745; *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).

Bennett argues that appellate counsel was ineffective for failing to raise the

ineffectiveness of trial counsel based on the following grounds: (1) failure to use material exculpatory evidence in Bennett's defense or to argue that the trial court improperly excluded such evidence; (2) failure to object to the prosecution's use of perjured testimony; (3) failure to argue that the State had failed to present material witnesses; (4) failure to argue that the trial court should have conducted *in camera* proceedings relating to the dismissal of a juror; (5) failure to argue that prosecutors had committed a *Brady* violation by not preserving 911 tapes; and (6) failure to object to the trial court's jury instruction on reasonable doubt. (Pet.'s Br., at 12-13.) As in the case of appellate counsel's own effectiveness, the *Strickland* test applies in the context of ineffective assistance of trial counsel. As indicated below, *see parts II.D.1-6*, because this Court cannot find that trial counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," appellate counsel properly declined to argue on appeal that trial counsel had been ineffective. *Strickland*, 466 U.S. at 686. Moreover, appellate counsel's strategic choices with regard to which claims to bring on appeal are "virtually unchallengeable." *Id.*, at 690-91. In the instant case, counsel's decision to omit a claim of ineffective trial counsel on appeal did not "fall outside the wide range of professionally competent assistance" and therefore cannot form the basis of a claim for ineffective appellate counsel under the Sixth Amendment. *Mayo*, 13 F.3d at 533; *Spears v. Spitzer*, No. 02 CV 2301 (JBW), 2005 U.S. Dist. LEXIS 3836, at *30 (E.D.N.Y. March 14, 2005). Moreover, petitioner cannot show under the standard set forth in *Strickland*, that appellate counsel's failure to raise the claim was "objectively unreasonable" or that, if raised, "there was a reasonable probability that [his] appeal would have been successful." *Id.* at 533-34.

For the reasons set forth below, this Court finds that petitioner's claims as to trial counsel's ineffectiveness are without merit; therefore, the Court rejects petitioner's request for habeas relief on the basis that appellate counsel was ineffective in failing to raise a claim of ineffective trial counsel on appeal.

1. Failure to Present Material Exculpatory Evidence

Petitioner argues that appellate counsel was deficient because he did not raise the issue that trial counsel was ineffective in failing to introduce two police reports into evidence at trial. (Pet.'s Br., at 26-27, 28-30.)

First, petitioner asserts that his trial counsel was ineffective in failing to offer into evidence a police report written by NYPD officer Raimon Cruz ("the Cruz report"), to demonstrate that Jiang had provided an account to the police of the first incident (where Davis jumped on the victim's car) that differed from his testimony at trial. Although trial counsel did not seek admission of the Cruz report, he cross-examined Jiang at length regarding the statements made in the Cruz report in order to impeach his testimony. (Tr. 391-396.) Furthermore, trial counsel used the report to refresh Officer Cruz' recollection at trial and to elicit testimony from Cruz showing that Jiang had made statements at the time of the incident that conflicted with his trial testimony. (Tr. 564-581.)

Second, petitioner contends that trial counsel failed to object in a timely manner to the court's refusal to admit into evidence a police report written by NYPD officer Jason Gaertner ("the Gaertner report")

demonstrating that Jiang had made statements to police that conflicted with his trial testimony about the fourth incident (where Davis broke the glass of the restaurant). Again, trial counsel questioned both Jiang and Gaertner as to the inconsistencies between the report and Jiang's trial testimony. (Tr. 432-433, 618-620; 624.)

The government contends that the Gaertner report was properly excluded by the trial court on the basis that it contained double hearsay, since the statements contained in the report were not provided by Jiang directly, but through employees of the restaurant, who translated for him. (Gov. Br., at 21.) According to petitioner, the reports were actually admissible because the restaurant employees were "agents" of Jiang and statements made by them on Jiang's behalf may be admitted without contravening the hearsay rule.[3] (Pet.'s Br., at 29-30.)

In fact, the statements attributed to Jiang in the police reports, whether made via a translator or otherwise, constitute inadmissible hearsay; trial counsel did not err in declining to admit the Cruz report and failing to object in a timely manner to the trial court's exclusion of the Gaertner report. "It is well-settled that a police report is admissible as an exception to the hearsay rule either as a business record under Rule 803(6) of the Federal Rules of Evidence or a public record under Federal Rule of Evidence 803(8)." *O'Keefe v. Honda Motor Co.*, No. 96 CV 1418 (EHN) (RML), 1998 U.S. Dist. LEXIS 8830, at *24-25 (E.D.N.Y. March 31, 1998) (collecting cases), *adopted by* 1998 U.S. Dist. LEXIS 8377 (E.D.N.Y. April 24, 1998). However, a party wishing to introduce a police report must provide an independent evidentiary basis for admitting hearsay statements by other individuals contained within a police report. *Id.* (citing *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not.")). Thus, even if Officers Cruz and Gaertner had spoken directly with Jiang, rather than through a translator, Jiang's statements in the report would have been inadmissible. *See, e.g., United States v. Pazsint*, 703 F.2d 420, 424-25 (9th Cir. 1983) (holding that where a police officer made 911 recordings documenting information told to him by a witness, the recorded statements "can not be given the presumption of reliability and regularity accorded a business record"). Under these circumstances, Jiang's direct testimony was admissible at trial, but

---

[3] Petitioner cites *Spett v. President Monroe Bldg. & Mfg. Corp.*, 19 N.Y.2d 203, 206 (N.Y. 1967), which holds that "[w]here an agent's responsibilities include making statements on his principal's behalf, the agent's statements within the scope of his authority are receivable against the principal," for the proposition that statements made by Jiang's translator in a police report are admissible. This case is inapposite. First, Jiang's alleged statements to the police do not qualify as admissions against interest, and second, there has been no showing whatsoever that the employees who translated for Jiang were acting as his agents. Moreover, inasmuch as petitioner relies upon state law in support of this claim, this Court cannot grant federal habeas relief on such basis. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

9

his prior statements, as recorded in the police reports, were not. *Id.* Of course, they could be used as prior inconsistent statements to impeach Jiang, which is precisely what petitioner's trial counsel did. Since there is no alternative basis for admission of Jiang's statements to the police based upon the record before this Court, there is no legal basis for questioning the state court's ruling that trial counsel was not ineffective in failing to move such statements into evidence. Likewise, appellate counsel was not ineffective in declining to raise this issue on appeal.

2. Failure to Argue That the State Presented Perjured Evidence

According to petitioner, appellate counsel was ineffective in failing to argue that trial counsel should have objected to Jiang's trial testimony on the basis that it was perjurious. As set forth below, the Court finds this argument without merit.

A conviction obtained through the use of false evidence, including perjury, must be set aside. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). The Court is obliged to order a new trial where "(1) the prosecution knew, or should have known, of the perjury, and (2) there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). In this instance, petitioner argues that Jiang testified falsely at trial when he stated (1) that he told Detective Cruz that petitioner and Davis had arrived at his restaurant at 12:01 a.m., and that Bennett stood aside while Davis damaged Jiang's vehicle; and (2) that in the last of the four alleged incidents, Bennett and Davis stood *outside* of the restaurant while Davis shattered his window. According to petitioner, these two statements, along with the fact of Jiang's longtime familiarity with Bennett, contradict the police reports documenting the relevant incidents, in which Jiang (1) told Cruz that two "unknown perpetrators" had "committed the crimes in question, threatened Jiang for money and not to call the police" and (2) told Gaertner that, during the last incident, one perpetrator had ordered food and shattered the window from *inside* on his way out of the restaurant. (Pet.'s Br., at 33.) At trial, counsel cross-examined Jiang with respect to the inconsistencies in his story. (Tr. 391-396, 432-433.) Throughout the cross-examination, Jiang denied making both statements recorded in the police reports. (*Id.*)

Based upon the record before this Court, the discrepancies between Jiang's testimony at trial and his statements in the police reports indicate neither that he testified falsely nor that Bennett's defense was prejudiced in any way. Both contradictory statements are easily explained by the fact that Jiang was unable to communicate with the police officers who arrived at the scene of the crimes. The officers wrote their reports based upon Jiang's limited English and the efforts of others, whose command of English and of the languages spoken by Jiang is unknown, to translate. In Cruz' testimony, he explained that he had taken Jiang's statements via a translator over the phone, and did not receive Jiang's story directly from Jiang. (Tr. 574-574.) Similarly, Gaertner testified that there was a language barrier that prevented him from communicating directly with Jiang. (Tr. 612, 618-620.) Other workers in the restaurant, who spoke "broken English," provided Gaertner with the information documented in his report. (618-620; 624.) Furthermore, Jiang himself explained to the jury that he is unable to read English (aside

10

from menu items at his restaurant), and did not proofread the police reports for accuracy. (Tr. 463-464.) At best, rather than demonstrating that Jiang testified falsely or prejudicing Bennett, these inconsistencies merely created a credibility issue for the jurors to consider. *See Johnson v. Gianbruno*, No. 04 Civ. 9094 (DC), 2006 U.S. Dist. LEXIS 25087, at *20 (S.D.N.Y. April 27, 2006) (holding that where a witness explained to the jury the reasons for the inconsistency in her prior testimony, "there is no reasonable likelihood that the allegedly false in-court identification could have affected" the jury's judgment). In the instant case, where the conflicting testimony was presented to the jury on cross-examination, the jury was entitled to (and did) weigh the evidence and decide the credibility issue for itself. *See United States v. McCarthy*, 271 F.3d 387, 399-400 (2d Cir. 2001) (citing *United States v. Joyner*, 201 F.3d 61, 82 (2d Cir. 2000) ("Cross-examination and jury instructions regarding witness credibility will normally purge the taint of false testimony.")).

The court finds that petitioner's claim that trial counsel was ineffective in failing to object to Jiang's allegedly false testimony is without merit, and the state court did not err in finding that appellate counsel was not ineffective in failing to raise such claim on appeal.

### 3. Failure of State to Present Material Witnesses

Petitioner incorrectly asserts that his rights pursuant to the Confrontation Clause of the Sixth Amendment were violated by the prosecution's failure to present the individuals who translated Jiang's statements to the police as witnesses at trial. (Pet.'s Br., at 35.) In fact, the Confrontation Clause protects a defendant's right to confront witnesses against him, primarily through cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987); *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). Where a witness fails to testify, the accused has no valid claim under the Confrontation Clause.[4] *See, e.g., Petito v. Artuz*, No. 97 Civ. 8758 (WHP) (KNF), 1999 U.S. Dist. LEXIS 19974, at *14 (S.D.N.Y. December 27, 1999) (where confidential informant did not testify at trial, "in essence, there was nothing to confront," and "[t]he Confrontation Clause [was] not implicated"), *aff'd*, No. 01-2651, 69 Fed. Appx. 26, 2003 U.S. App. LEXIS 13800 (July 3, 2003).

---

[4] Although petitioner cannot make out a claim under the Confrontation Clause, in his application for a writ of error *coram nobis* before the state court, he argued that petitioner had been denied a material witness charge under New York state law. Such a charge permits a party to request that the court order the appearance of an uncalled witness who is knowledgeable about a pending material issue and whose testimony would be expected to be favorable to the opposing party. *People v. Gonzalez*, 68 N.Y.2d 424, 428 (N.Y. 1986). However, such a claim "raises only [an] issue[] of state law that can not justify federal habeas relief." *Castro v. Fisher*, No. 04 Civ. 0346 (DLC) (AJP), 2004 U.S. Dist. LEXIS 13976, *56 (S.D.N.Y. July 23, 2004) (citing *Green v. McCray*, No. 02 Civ. 9332 (JSM), 2003 U.S. Dist. LEXIS 12359, at *2 (S.D.N.Y. July 18, 2003)), *adopted by* 2004 U.S. Dist. LEXIS 22527 (S.D.N.Y. Nov. 8, 2004); *Estelle*, 502 U.S. at 68 ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). As this claim was not presented in the instant habeas petition and, in any case, is beyond the purview of the federal courts because it does not implicate a Constitutional right, this Court declines to address it on the merits.

Petitioner's claims are likewise meritless under the Compulsory Process Clause of the Sixth Amendment, which provides that "the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const., amend. VI. "The Compulsory Process Clause does not impose an obligation on the prosecution to call witnesses who are favorable to the defense." *Brown v. McKinney*, 358 F. Supp. 2d 161, 170 (E.D.N.Y. 2005). It was petitioner's responsibility to present witnesses in his own defense, and he has made no showing that he was denied the right to do so.[5] Petitioner's complaints that the prosecution failed to call witnesses in his favor "cannot be construed as a violation of petitioner's right to compulsory process." *Id.*; *Funches v. Walsh*, No. 05 Civ. 2839 (NRB), 2006 U.S. Dist. LEXIS 22103, at *45 (S.D.N.Y. April 21, 2006) ("Surely, a prosecutor is not obligated to call every possible witness. If petitioner believed [the witness] would have been helpful to his case, he certainly could have subpoenaed [the witness] himself."); *Simms v. Moscicki*, No. 06 Civ. 2056 (DLC) (AJP), 2006 U.S. Dist. LEXIS 59932, at *76 (S.D.N.Y. August 25, 2006) ("The prosecutor is not obligated to call witnesses, particularly those who would testify favorably for the defense, and Simms' trial counsel could have called the other officers to testify at trial."); *United States v. Greco*, 298 F.2d 247, 251 (2d Cir. 1962) ("The fact that appellant could not compel the attendance of an unnamed witness for whom he never asked did not deprive him of any constitutional right."). This Court therefore declines to find that the state court unreasonably applied federal law in failing to find petitioner's appellate counsel ineffective on this basis.

### 4. Failure of the Trial Court to Conduct *In Camera* Questioning of Juror 12

Petitioner argues that appellate counsel was ineffective in declining to raise trial counsel's failure to request further *in camera* questioning of Juror 12.[6] During the trial, it came to the Court's attention that petitioner had allegedly threatened Juror 12 following the first day of testimony. (Tr. 410:18-416:12, 508:12-509:12.) The trial judge questioned Juror 12 *in camera* and asked whether she could continue to decide the case fairly. (Tr. 413:23-414:12.) When Juror 12 responded that she could no longer decide the case based solely upon the evidence and the law, and asserted that her verdict had already been tainted by the incident, the court dismissed her from jury service. (Tr. 413:23-414:12; 416:2-12.) According to petitioner, trial counsel should have requested that the court question Juror 12 as to whether she relayed Bennett's alleged threats to the other jurors. (Pet.'s Br., at 34.) Petitioner argues

---

[5] Petitioner fails to argue in the instant habeas petition that trial counsel was ineffective for failing to call such witnesses himself; in any case, as such a claim was not exhausted before the state court, this Court shall not address it *sua sponte*. *Lundy*, 455 U.S. at 519-20.

[6] The government argues that trial counsel failed to preserve any objection to the trial court's handling of the issue involving Juror 12. Because this Court concludes on the merits, under the standard for habeas review, that the trial court did not commit manifest error, we need not consider the procedural question of whether the objection was properly preserved or waived. *See United States v. Abrams*, 137 F.3d 704, 708 (2d Cir. 1998) ("Because we conclude, under the ordinary standard of appellate review, that the district court did not abuse its discretion, we need not consider whether the objection was properly preserved or waived.").

12

that trial counsel's failure to do so constituted ineffective assistance, a claim that should have been raised by appellate counsel on appeal. (*Id.*)

Petitioner's claim implicates the Sixth Amendment right to an impartial jury. "The right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). A criminal defendant challenging the impartiality of his jury panel has the burden of proving prejudice, "namely, 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" *Gordon v. Cunningham*, No. 05 Civ. 10701 (NRB), 2006 U.S. Dist. LEXIS 89054, at *12 (S.D.N.Y. December 8, 2006) (quoting *Irvin*, 366 U.S. at 723 (internal citation omitted)) (holding that habeas petitioner had not been denied an impartial jury where the trial court refused to dismiss a juror who made a comment about petitioner's guilt prior to deliberating). A habeas court sitting in review of a state trial court's finding of impartiality may overturn it only upon a finding of "manifest error." *Patton v. Yount*, 467 U.S. 1025, 1031 (1984) (citing *Irvin*, 366 U.S. at 723). Ultimately, a habeas court must determine "whether there is fair support in the record for the state trial court's conclusion that the jurors here would be impartial." *Patton*, 467 U.S. at 1038; *see also Gordon*, 2006 U.S. Dist. LEXIS 89054, at *13.

The Second Circuit has held that where potentially prejudicial occurrences involving a trial jury take place, "it is up to the trial judge to determine" their effect. *United States v. Sun Myung Moon*, 718 F.2d 1210, 1235 (2d Cir. 1983) (holding that it was unnecessary for a juror to testify at trial where the juror expressed concern that a shot through her window during trial was related to her jury service). "Courts face a delicate and complex task whenever they undertake to investigate reports of juror misconduct or bias during the course of a trial. . . . [A]ny such investigation is intrusive and may create prejudice by exaggerating the importance and impact of what may have been an insignificant incident." *Abrams*, 137 F.3d at 708 (holding that, where juror submitted a note to the Court requesting an instruction not to discuss the case until deliberation, the court did not abuse its discretion in failing to investigate the circumstances and substance of any premature jury discussions). "In many instances, the court's reiteration of its cautionary instructions to the jury is all that is necessary." *Id.* (citing *United States v. Thai*, 29 F.3d 785, 803 (2d cir. 1994)). In this instance, after an *in camera* discussion, the judge discharged Juror 12, finding that she was no longer impartial, and instructed her not to say anything to the other jurors. (Tr. 416.) The court took such steps immediately: Bennett allegedly threatened Juror 12 at 4:20 p.m., following the close of testimony for that day, and the trial court questioned Juror 12 *in camera* the next morning, before the commencement of any further proceedings. (Tr. 410-416.) Thus, it appears from the record that the trial court believed that the questioning of and additional warning to Juror 12 were sufficient to prevent bias of the other jurors. Petitioner has failed to present any evidence that, following Juror 12's discharge, any of the remaining jurors were actually biased against him. *See Gordon*, 2006 U.S. Dist. LEXIS 89054, at *12 (holding that defendant has the burden of proving prejudice); *Irvin*, 366 U.S. at 723 (same). Because the trial court's conclusion that the jury had not been improperly influenced by Juror 12 was reasonable, and was not "manifest error," the "presumption of

correctness afforded to the state court's decision has not been rebutted." *Gordon*, 2006 U.S. Dist. LEXIS 89054, at *17; *Patton*, 467 U.S. at 1031. The Court finds that trial counsel was not ineffective in failing to object to the trial court's handling of Juror 12, and therefore, the state court's ruling that appellate counsel was not ineffective in declining to raise such issue on appeal was not contrary to established federal law.

### 5. The State Withheld 911 Tapes in Violation of *Brady v. Maryland*

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In order to prevail on a *Brady* claim, petitioner must demonstrate that material evidence favorable to his case was not disclosed to him. *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) ("[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Failure to disclose such material "merits relief only if the prosecution's failure 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678).

At petitioner's trial, the prosecution produced only three of four tape recordings of Jiang's calls to 911. According to the State, the tapes that were not produced had been destroyed, rather than preserved for trial. According to petitioner, appellate counsel was ineffective in failing to assert on appeal that trial counsel had been ineffective because he did not argue that the prosecution had violated *Brady* by failing to produce the tapes. (Pet.'s Br., at 36-37.) However, petitioner has failed to allege, let alone demonstrate, that the destroyed 911 tapes contained evidence favorable to him, nor that he suffered any prejudice from the State's failure to preserve the tapes. *Strickler*, 527 U.S. at 281-82 (finding that for a Brady violation to occur, "the evidence at issue must be favorable to the accused, . . . that evidence must have been suppressed by the State, . . . and prejudice must have ensued"). Jiang testified that in his calls to 911, he stated in "broken" English that "somebody was ruining my sky light window in my car" and "one person brought a gun to my restaurant." (Tr. 321, 335.) Such statements were neither exculpatory nor would they impeach Jiang's trial testimony. *See Bagley*, 473 U.S. at 676 (holding that both impeachment evidence and exculpatory evidence fall under the *Brady* rule). There is no indication (and, moreover, petitioner does not allege) that the recordings would have yielded material favorable to petitioner. In fact, petitioner actually benefited from the alleged *Brady* violation, inasmuch as the trial court permitted the jurors to draw a negative inference with regard to the prosecution case based upon the State's failure to produce the tapes:

> You've heard testimony regarding a 9-1-1 tape in this case. I charge you that 9-1-1 tape was not preserved by the People and was not produced at the trial, as was required. You may not speculate or guess as to what the tape may have shown. However, because [of] the People's failure to preserve

and produce this evidence[,] *you may, although [you are] not required to, draw any inference unfavorable to the People*, that is, had that 9-1-1 tape been preserved it would have yielded evidence contrary to the People's position at trial and/or would support the defendant's position at trial.

(Tr. 697) (emphasis added). In light of (1) petitioner's failure to show that the 911 tapes contained evidence that was either favorable or "material," as well as (2) the trial court's corrective instruction, which inured to the petitioner's benefit, this Court declines to find that a *Brady* violation was committed by the State. *Strickler*, 527 U.S. at 281 ("[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."). Because petitioner's *Brady* claim is meritless, neither trial nor appellate counsel were ineffective in failing to raise it before the state courts. The state court did not err in failing to grant relief to petitioner on this basis.

6. Failure to Contest the Trial Court's Jury Charge

Petitioner argues that trial counsel was ineffective in failing to contend that the trial court's jury charge on reasonable doubt was unconstitutional. According to petitioner, the trial court incorrectly instructed the jury not to speculate about missing evidence. First, petitioner asserts that this charge contradicted the court's earlier instruction "that the jury could speculate as to the contents of the missing 911 tapes and why the State failed to produce such tapes." (Pet.'s Br., at 37.) In fact, petitioner incorrectly misstates the trial judge's charge as to the 911 tapes, in which he clearly warned "[y]ou may *not* speculate or guess as to what the tape may have shown." (Tr. 697.) Second, petitioner argues that the jurors should have been permitted to speculate generally about "the omission of reasonable evidence." (Pet.'s Br., at 37.)

In the context of federal habeas courts reviewing state court convictions, "where an error in a jury instruction is alleged, 'it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'" *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). "The question is not whether the trial court gave a faulty instruction, but rather 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* Where, as here, a defendant objects to the trial court's instructions on the "reasonable doubt" standard of proof, a conviction should be disturbed "only when it appears reasonably likely that the jury understood the instructions to allow it to convict on evidence insufficient to prove every element of the offense charged beyond a reasonable doubt." *United States v. Desimone*, 199 F.3d 217, 227 (2d Cir. 1997). That is not the case here. The trial court's instructions, viewed in their entirety, "correctly conveye[d] the reasonable doubt concept to the jury." *Id.* Petitioner has not presented any evidence tending to show that the jury instructions below deprived him of his Fourteenth Amendment rights. Therefore, the Court finds that trial counsel was not ineffective in failing to raise a claim that the trial court's jury instruction on reasonable doubt violated Constitutional requirements. Thus, the state court did not unreasonably apply federal law in ruling that appellate

counsel was not ineffective in declining to seek an appeal premised on ineffectiveness of trial counsel on this basis.

In sum, Bennett has failed to demonstrate, under the *Strickland* standard, that the performance of his appellate counsel (or trial counsel) was constitutionally defective or that he was prejudiced by such performance. Therefore, with respect to all of Bennett's claims of ineffective assistance of appellate counsel, the state appellate court's ruling – namely, that Bennett was not denied effective assistance of appellate counsel – was not contrary to, nor an unreasonable application of, clearly established federal law, and therefore does not warrant federal habeas relief. Accordingly, the habeas petition must be denied.

E. Request for an Evidentiary Hearing

Finally, petitioner requests that this Court conduct an evidentiary hearing. Following the enactment of AEDPA, "the Supreme Court and Congress have severely limited the situations in which a habeas court is required or even permitted to hold an evidentiary hearing to consider factual claims by a habeas petitioner." *Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1999) (citing *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5-6 (1992) (requiring a hearing only when the petitioner can establish cause for his failure to develop an adequate factual record below and prejudice resulting from that failure)). The relevant standard for whether a habeas petitioner may be entitled to an evidentiary hearing is now statutorily prescribed by 28 U.S.C. § 2254(e)(2), which proscribes such a hearing unless the applicant shows that "(A) the claim relies on (i) a new rule of constitutional law" or "(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence" and "(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). The factual record here was fully developed in the state court and petitioner has not satisfied any of the prerequisites for an evidentiary hearing under the AEDPA. Accordingly, this Court denies the request for an evidentiary hearing.

III. CONCLUSION

For the foregoing reasons, Bennett's petition for a writ of habeas corpus is DENIED. Because Bennett has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 31, 2007
Central Islip, New York

\* \* \*

The attorney for petitioner is Damond J. Carter, Esq., Law Office of Damond J. Carter, PLLC, P.O. Box 6365, Albany, New York 12203. The attorney for respondent is Nisha M. Desai, Esq., State of New York Office of the Attorney General, 120 Broadway, New York, New York 10271.